### STATE v. HARRIS.
No. 75-253.

Circuit Court, Dade County.

June 18, 1975.

Richard E. Gerstein, State Attorney, Carol King Guralnick, Assistant State Attorney, for the state.

Phillip A. Hubbart, Public Defender, Mark King Leban, Assistant Public Defender, for the defendant.

**GEORGE ORR, Circuit Judge.**

This cause having come before the court on defendant's motion to suppress evidence, and the court having heard testimony and argument of counsel and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law —

On December 27, 1974, Officers Vasquez and Lindahl responded to a radio call concerning an alleged disturbance at LaGrace's Bar at 9354 N. W. 17th Avenue. No other information was received by the officers on the radio.

The owner of the bar, one John Grandison, had reported a robbery in the bar on December 21, 1974. On December 27, 1974, the defendant was present in the bar. Grandison caused an employee to telephone a Detective Ross to inform Ross that the defendant was in the bar. Ross arrived moments before Officers Vasquez and Lindahl had arrived. Grandison nodded towards the defendant and indicated to Ross that the defendant was a possible suspect in the robbery which had allegedly occurred earlier.

Detective Ross advised Officer Vasquez to separate the defendant and Grandison and to run a "records check" on the defendant outside the bar. Ross expressly testified pursuant to questioning by the court that the defendant was "free to go" at the time Vasquez took the defendant outside for a records check.

Officer Vasquez did not at any time see any disturbance and his uncontroverted testimony was that he had no reason to believe the defendant was armed. No officer ever saw a weapon on the defendant's person. The defendant was not under arrest at the time Officer Vasquez took him out for the records check.

Detective Ross had never seen the defendant before and had not spoken to the defendant. He never directed that the defendant be arrested for any offense at the bar.

The testimony was conflicting but indicates that Officer Vasquez did not learn that the defendant was a possible robbery suspect until *after* the records check.

Vasquez took the defendant outside the bar and asked the defendant if he was armed; the defendant replied that he was not armed. At that point, Vasquez felt the defendant's waistband and removed the .22 caliber revolver sought to be excluded. The defendant was thereafter placed under arrest for carrying a concealed firearm. No search warrant had been issued and the defendant did not consent to any search. It was not until hours later at the Public Safety Department that the defendant was arrested for robbery.

It is the finding of the court that no probable cause existed for the warrantless search of the defendant's person. In order to justify a warrantless search, probable cause must be shown to have existed prior thereto. D'Agostino v. State, 310 So.2d 12 (Fla. 1975); Kraemer v. State, 60 So.2d 615 (Fla. 1952). The fact that a weapon was in fact found cannot justify the search made *prior* to its discovery. "Officers cannot search first for incriminating evidence and then base an arrest and conviction upon such illegal search and seizure." D'Agostino v. State, supra. Nor was the instant search made incident to any lawful arrest inasmuch as it is undisputed that the defendant had not been arrested prior to the search.

The fact that the defendant was "free to go" at the time of the "records check," coupled with the fact that no officer had any reason to believe he was armed, leads to the conclusion that no probable cause existed to conduct the search or the records check in the first instance. The defendant, being "free to go" cannot be reasonably said to have been "detained" under the "stop and frisk" law, Florida Statutes §901.151(2). Under either the probable cause standard or the "stop and frisk" test, the search and seizure was unlawful and the fruit of that search must be and it is hereby suppressed.